UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ALEXANDER WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 15-229-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| J. RAY ORMOND, Warden,[1] | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Inmate Alexander Williams has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking to challenge the imposition of disciplinary sanctions. [Record No. 1]  For the reasons outlined below, the Court will deny the petition.

A prison officer conducted a search of cell 804 and found a "shank" inside, taped under one of the lockers while Williams was confined at the Federal Correctional Institution in Jesup, Georgia in February 2013.  [Record No. 1-1 at 2-3]  The officer took a photograph of the shank and described it "as being approximately six and a half inches in length, made of metal, sharpened to a point at one end, while the other end was taped with yellow tape."  [Record No. 1-1 at 2]  The officer reported that Williams and another inmate were both assigned to cell 804, that both lockers in the cell were unsecured at the

---

[1] Williams named J.C. Holland as the respondent in this proceeding because, at the time Williams filed this action, he was confined at the United States Penitentiary (USP) – McCreary in Pine Knot, Kentucky, and Holland was the warden at the facility.  However, Holland is no longer the warden at USP – McCreary.  Since J. Ray Ormond is currently the warden at USP – McCreary, the Court will substitute Ormond as the respondent in this proceeding.

time of the search, and that he found the shank under the unsecured locker that was assigned to Williams.  [Record No. 1-1 at 2-3]  Williams was charged with a Code 104 offense, possession of a weapon, As a result of the incident.  [Record No. 1-1 at 1]

A disciplinary hearing was held on February 28, 2013.  [Record No. 1-1 at 1] Williams did not dispute that the officer found the shank in his cell.  Instead, he contended that someone set him up by planting the shank.  [Record No. 1-1 at 1, 3]  Notwithstanding this argument, the discipline hearing officer (DHO) concluded that Williams committed the prohibited act of possessing a weapon.  [Record No. 1-1 at 2-3]  The DHO explained that the officer found the shank in Williams's cell and observed that "[p]olicy makes you responsible for everything on your person, in your personal property, and in your living quarters (cell)."  [Record No. 1-1 at 3]  The DHO also noted, "[t]he fact that the instrument was found attached under your locker, more closely related it to you, than to your cell mate."  [Record No. 1-1 at 3]  Ultimately, the DHO imposed 30 days in disciplinary segregation and ordered that Williams lose 41 days of good conduct time and his prison job for a minimum of one year.  [Record No. 1-1 at 3]

Williams appealed the DHO's decision administratively within the Bureau of Prisons (BOP).  [Record No. 1-1 at 5]  He argued that he received "disparate treatment" as compared to "similarly situated individuals" and suggested once again that he was set up. [Record No. 1-1 at 5-6]  Williams also argued that the imposition of sanctions was "contrary to the weight of the evidence," and he said that the locker under which the shank was found was not assigned to him.  [Record No. 1-1 at 5]  Instead, Williams claimed that "Jesup F.C.I. does not assign[ ] specific lockers to inmates," but merely places them "in

the cells for storage purposes." [Record No. 1-1 at 5] Williams then contended that, "[s]uffice it to say, I was not the only person assigned to cell 804 . . ., yet I was the only one penalized for having possession of a weapon. This is contrary to established policy which commands that both cell mates are directly responsible for items found in the common area of a cell." [Record No. 1-1 at 5]

The BOP rejected Williams's appeal. [Record No. 1-1 at 8] While it recognized Williams's argument that "other inmates in similar circumstances had their charges expunged for this same type of prohibited act," it explained that "[e]ach incident report is considered on a case-by-case basis and many factors are taken into consideration prior to the DHO rendering a sanction(s) which he hopes will deter future disruptive behavior." [Record No. 1-1 at 8] The BOP then acknowledged but rejected Williams's arguments that he was set up and did not possess the shank, citing BOP policy which indicates that it was Williams's responsibility to keep his area free of contraband. [Record No. 1-1 at 8] The BOP advised Williams, "[i]n this case, the contraband was found in a common area of your cell and you are responsible for all items found in these areas." [Record No. 1-1 at 8]

Williams then filed his § 2241 petition with this Court. [Record No. 1] He suggests that the Court should reverse the DHO's imposition of sanctions because at least one other inmate who was also charged with a Code 104 offense for allegedly possessing a weapon had the charge against him dismissed. [Record No. 1 at 7] Williams also suggests that there was insufficient evidence against him, implying that he was set up and arguing that he should not be liable for possession because the shank was found in a common area. [Record No. 1 at 7-8]

Williams's arguments are without merit. As an initial matter, Williams does not contend that he was denied the procedural protections to which he was due, such as advance notice of the charge, the opportunity to present evidence in his defense, and a written decision explaining the grounds used to determine his guilt. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Instead, he suggests that his case should be dismissed because prison officials dismissed a Code 104 offense against another inmate. [Record No. 1 at 7] But, as the BOP pointed out, each case is different and it is irrelevant how the BOP resolved a different case involving a different inmate and different facts.

The pertinent question before this Court is whether there was "some evidence" in the record to support the DHO's decision in this case. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013). This is a very low threshold. Indeed, the Court does not examine the entire record or independently assess the credibility of witnesses. *Hill*, 472 U.S. at 455. Instead, it asks "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (emphasis added); *see also Higgs v. Bland*, 888 F.2d 443, 448-49 (6th Cir. 1989) (discussing this standard).

In this case, there was certainly "some evidence" to support the DHO's decision that Williams possessed the shank. After all, the prison officer who conducted the search stated that he found the shank taped under a locker in cell 804 and that Williams was assigned to that cell. [Record No. 1-1 at 2-3] The prison officer also submitted a photograph of the shank. [Record No. 1-1 at 2-3] The DHO then relied on this evidence in deciding that Williams possessed the weapon. [Record No. 1-1 at 2-3]

Despite the evidence against him, Williams emphasized in his administrative appeal that, notwithstanding the prison officer and DHO's statements to the contrary, "Jesup F.C.I. does not assign[ ] specific lockers to inmates," but merely places them "in the cells for storage purposes." [Record No. 1-1 at 5] Williams also says in his petition, "I have no way to secure my cell," and he claims that the prison officer found the shank in "a common area" that was "occupied by two individuals" and could be accessed by other people in the unit. [Record No. 1-1 at 2-3] But even if Williams's claims are true, he does not dispute the simple fact that the prison officer found the shank in cell 804 and that he was assigned to that cell. If anything, Williams admitted in his administrative appeal that "established policy . . . commands that both cell mates are directly responsible for items found in the common area of a cell." [Record No. 1-1 at 5] Since the prison officer found the shank in Williams's cell, there was certainly sufficient evidence to support the imposition of sanctions in this case.

This result is consistent with other constructive possession cases in this district in which a DHO imposed sanctions on an inmate after contraband was found in that inmate's cell. *See, e.g., Miles v. USP-Big Sandy*, No. 7:11-cv-058-KSF, 2012 WL 1380274 (E.D. Ky. 2012); *Farris v. Wilson*, No. 6:09-cv-127-GFVT, 2009 WL 3257955 (E.D. Ky. 2009); *Perez v. Rios*, No. 7:08-cv-171-KKC, 2009 WL 499141 (E.D. Ky. 2009). In each of those cases, the Court stressed that inmates are responsible for ensuring that their cells remain free of contraband and decided that there was some evidence to support the DHO's decision. *Miles*, 2012 WL 1380274, at *3; *Farris*, 2009 WL 3257955, at *5; *Perez*, 2009 WL 499141, at *2. The same is true in this case.

Accordingly, it is hereby

**ORDERED** as follows:

1.      J. Ray Ormond is **SUBSTITUED** for J.C. Holland as the respondent in this

proceeding.

2.      Williams's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241

[Record No. 1] is **DENIED**.

3.      This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4.      Judgment shall be entered this date in favor of the respondent.

This 26th day of June, 2017.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge